Curia, per
Harper, Ch.
We concur with the Chancellor who heard the cause, as to all the grounds of appeal, except the last. I have no doubt but that the effect of the execution of the deed by the Commissioner in Equity, to James Dugan, in trust for the heirs *12 and devisees of Col. Thomas Dugan, was to vest in them the legal title of the land, by virtue of the statute of uses.
If a conveyance be made to one, and delivered to a stranger for liis benefit, this carries the title of the land; because the donee’s assent is presumed to that which is apparently for his benefit. Upon coming to the knowledge of it however, he may dissent, and then the deed is void db initio. All the devisees who are parties to this suit now express their dissent; and if they were at liberty to do so, the effect would bo to prevent the execution of the use in them, and to leave the legal title in James Dugan, to whom the conveyance was directly made. Having purchased without any understanding with them, he must be held to have taken the risk of their assenting; and the legal title being in him, he must be bound by his bond given for the purchase money, unless he could shew some ground for being relieved from his purchase. The only ground relied upon (and which it seems hardly necessary to consider) is, that he purchased under a mistake of the law, being misled by the advice of counsel. But, speaking on the supposition that he purchased without the privity or assent of the other parties, ho certainly was not advised that he could purchase for them without their consent, and compel them to take the land whether they would or not. If he was misled by advice, it was to this effect, that the conveyance would give him authority to sell the land, notwithstanding the trust declared. And in the case supposed, that all tho parties could and did dissent, the advice was perfectly correct. The legal title being in him, he might convey it. If all the parties assented, he has nothing to complain of. They are entitled to nothing but the land, or the proceeds of it; by accepting which, they will confirm the conveyance made by him. So of any of the parties who assented or dissented.
, With respect to the parties who were of age at the time, we see no reason to distrust the Chancellor’s conclusion, that he purchased under an understanding with George and William Dugan, that ho should bid off the land, if it appeared likely to go for less than its value. The evidence is perfectly satisfactory of Thomas Du-gan’s assent after the sale. Nor do I think there is any force in the objection, that he did not pursue the agreement, by bidding off *13 tlie land without taking any title, and leaving the land to be resold under the older of the Co(urt of Equity. ¥e have no evidence of the precise terms of the agreement, only generally of an agreement to bid off the land. This was substantially performed by taking such a conveyance as vested the land in them just as it was before; and the Court would not subject him to liability if he failed to pursue the precise form which might now appear most convenient.
The only difficulty relates to the parties who were infants at the time, and who are understood to be now of age, and to dissent. The Chancellor supposes Jam'es Dugan to'have been appointed their guardian or trustee, in relation to this land, by the will of Col. Dugan. But, supposing this to be so, certainly a guardian or trustee is not authorized to purchase for his ward or cestui que trust, or he must do so at his own risk, subject to his assent or dissent. The- Chancellor supposes that there is difference when the ward’s own property is the subject of sale, and that the guardian may, in pursuance of his duty, bid off the property to prevent its being sacrificed. But I know of no principle or authority for this, or that any such duty is required of him when the property is sold by order of Court. If it were a matter of duty, he would be liable for the neglect of it. But I have never known of such a liability being incurred. He is certainly to be commended for vigi. lance, in attending to his ward’s interest; but the ward is not to be made liable for losses incurred by his defect of judgment. If in truth the property be likely to be sold at a sacrifice, he runs no risk; for the ward’s interest will induce him (or will induce the Court, if the Court has to decide for him) to assent to the purahase; but if he has prevented an advantageous sale, he must bear the loss. The natural conclusion would be, that in this case, the land was bid up to near $6000 by others. By bidding that sum, James Dugan prevented the sale. It has since been sold for $4000. If by an injudicious interference, which no official duty required of him, he has prevented a more advantageous sale, why should the loss be thrown on his wards'? When a trustee purchases the property of the cestui que trust, for himself, it is at the option of the cestui que trust to set aside or confirm the sale. And so I appre *14 hend it must be when he purchases in the name of the cestui que trust.
But, in truth, James Dugan was neither guardian nor trustee under the will. He had simply an authority to manage the property without any view to a sale. Nor did his character of receiver require him to protect the sale. He was also guardian ad litem of the infants, in the suit in Equity. But it is generally understood that the authority of such an one terminates with the judgment or decree. Certainly, however, the office gave him no authority to .purchase for the infants, nor did his duty require it of him.
The decree of the Chancellor is therefore affirmed, except that the children of John Dugan and Park Dugan respectively, are declared entitled to one-eighth part of the amount of the original sale of the land, made by the Commissioner in Equity, to James Du-gan, and it is ordered and decreed accordingly.